**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2116-22

JOSE CAMILO,

     Appellant,

v.

NEW JERSEY STATE
PAROLE BOARD,

     Respondent.

_____

Submitted April 30, 2024 – Decided May 13, 2024.
Remanded by the Supreme Court September 30, 2025.
Resubmitted October 8, 2025 – Decided October 28, 2025

Before Judges Mayer and Augostini.

On appeal from the New Jersey State Parole Board.

Jose Camilo, appellant pro se.

Matthew J. Platkin, Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Christopher C. Josephson, Deputy Attorney General, on the brief).

PER CURIAM

This matter is before us on remand from the Supreme Court for reconsideration in light of Fred Krug v. New Jersey State Parole Board, 261 N.J. 477 (2025). For the reasons that follow, we vacate the February 22, 2023 final agency decision by the New Jersey Parole Board (Board), and remand for a review of a second request for parole submitted by Jose Camilo.

We briefly summarize the relevant facts guiding our review. In 1982, a jury convicted Camilo of murder, attempted murder, aggravated assault, possession of a weapon for unlawful purpose, and terroristic threats. Camilo committed these offenses in 1980.

Initially, the judge sentenced Camilo to life in prison for murder, with a twenty-five-year period of parole ineligibility, and a consecutive term of twenty-years for aggravated assault, with a ten-year period of parole ineligibility. The murder conviction was merged with the aggravated assault conviction. After a successful petition for post-conviction relief, Camilo's sentence for aggravated assault was amended to ten-years in prison, with a five-year period of parole ineligibility, concurrent to the life sentence for murder.

Camilo became eligible for parole in 2012 and again in 2022. Both times, the Board denied parole and established a future eligibility term (FET). We affirmed the Board's decisions. See Camilo v. N.J. State Parole Bd., No. A-445-

17 (App. Div. Oct. 20, 2019); <u>Camilo v. N.J. State Parole Bd.</u>, No. A-2116-22 (App. Div. May 13, 2024).

On September 30, 2025, the New Jersey Supreme Court granted Camilo's petition for certification and summarily remanded the matter to this court. On remand, the Court requested we reconsider the Board's denial of Camilo's second request for parole in light of its decision in <u>Krug.</u>

In <u>Krug</u>, the Court reviewed the history of the Parole Act of 1948, N.J.S.A. 30:4-123.1 to -123.12 (repealed by <u>L.</u> 1979, <u>c.</u> 441 § 27, eff. April 21, 1980), the Parole Act of 1979, N.J.S.A. 30:4-123.45 to -123.76, and the 1997 amendments to the 1979 Parole Act. The Court also considered the evolving case law guiding review of parole applications.

The Parole Act of 1948 allowed the Board to consider all existing records in reviewing parole applications. <u>L.</u> 1948, <u>c.</u> 84 § 9. The Parole Act of 1979 limited the Board to consideration of only "new information" in reviewing parole applications. <u>L.</u> 1979, <u>c.</u> 771 § 12(c). One of the 1997 amendments to the 1979 Parole Act abolished the new information limitation and allowed the Board to consider all relevant information for second or subsequent parole hearings. <u>L.</u> 1997, <u>c.</u> 213 § 2 (codified at N.J.S.A. 30:4-123.56(c)).

3                                                      A-2116-22

Like the petitioner in Krug, Camilo argued retroactive application of the 1997 amendment to the N.J.S.A. 30:4-123.56 limited his chance of obtaining release and increased his sentence in violation of the ex post facto clauses of the federal and state constitutions. See N.J. Const. art IV § 7, ¶ 3; U.S. Const. art I, § 10, cl.1. Camilo claimed the Board's retroactive application of the 1997 amendments "increased [his] time in prison by repeatedly relying on the nature of the offense to deny him parole again and keep him incarcerated." He further asserted the Board considered old information it previously considered in denying his first parole application. Additionally, he claimed the Board was obligated to release him unless it provided new evidence that he would reoffend if released.

In rejecting Camilo's ex post facto argument, the Board noted the 1979 Parole Act was amended by the Legislature in 1997. See L. 1997, c. 213. Under the 1997 amendments, the Board denied Camilo's second application for parole, explaining it was

> no longer restricted to considering only new information at each time of parole consideration. The Board note[d] that the Supreme Court of New Jersey ruled . . . the 1997 amendment eliminating consideration of "new information" with respect to subsequent parole applications after denial of parole was a procedural modification that did not constitute a substantive change in parole release criteria, and thus,

4

application of the amendment to an inmate who was sentenced prior to 1997 does not violate the ex post factor clause.

The Krug Court clarified some "confusion" in prior state and federal court opinions addressing ex post facto challenges to the 1979 Act and 1997 amendments. 261 N.J. at 493. After addressing misstatements in state and federal case law addressing ex post facto challenges to denial of parole applications, the Court explained the focus is not on procedural modifications which did not substantively change the parole release criteria. Id. at 495. The Court explained "[t]he critical inquiry is whether the statute realistically produces a sufficient risk of increasing the measure of punishment as to offend the constitutional prohibition" under the ex post facto clause. Id. at 496 (quoting Trantino v. N.J. State Parole Bd., (Trantino V), 331 N.J. Super. 577, 610 (App. Div. 2000)). Thus, the "controlling inquiry" in a parole context "is whether the retroactive application of a parole law 'creates a significant risk of prolonging incarceration.'" Ibid. (quoting Garner v. Jones, 529 U.S. 244, 250-52 (2000)).

The Board's February 22, 2023 denial of Camilo's second parole application reasoned there was no change in the parole criteria under the 1997 amendments because the modifications were procedural rather than substantive. The Court's decision in Krug expressly rejected such reasoning for denying

5

parole to those inmates who are subject to the 1979 Parole Act based on the date they committed their crimes. Id. at 497 ("To the extent that Trantino V has been read to mean that procedural changes cannot violate the [s]tate or [f]ederal [e]x [p]ost [f]acto clauses, it is hereby overruled.")

Camilo's offenses took place in 1980. Thus, the law governing review of his parole applications was the 1979 Parole Act.[1] The 1979 Parole Act limits the Board to consideration of "new" information in deciding second or subsequent parole applications. L. 1979, c. 771 § 12(c). Additionally, the 1979 Parole Act expressly created a presumption in favor of release of the inmate and shifted the burden to the State to prove the inmate should not be released if there was a substantial likelihood the inmate would commit a crime if released. Krug, 261 N.J. at 487 (citing N.J. State Parole Bd. v. Byrne, 93 N.J. 192, 205 (1983)). The 1979 Parole Act "narrowed the information on which the Board could rely to deny parole" and stated "[a]n inmate shall be released on parole on the new eligibility date unless new information filed . . . indicates by a preponderance of the evidence that there is a substantial likelihood that the inmate will commit a

---

[1] Because Camilo's appeal from denial of his second parole application was pending at the time the Court announced the decision in Krug, he is entitled to pipeline retroactivity of the holding in that case. See State v. Knight, 145 N.J. 233, 250-51 (1996).

A-2116-22

crime . . . if released on parole at such time." Id. 487-88 (emphasis removed) (citing L. 1979, c. 771 § 12(c)).

Camilo was convicted in 1982 for crimes he committed in 1980. Thus, the criteria for a parole determination is the 1979 Parole Act, which limited the Board's review to "new information" obtained since the last parole hearing. The range of information the Board could consider at Camilo's second parole review was limited under the 1979 Parole Act, and the Board should not have considered the same information it considered at Camilo's first parole hearing.

In the Statement of Items Comprising the Record (SICR) on appeal, it appears the Board may have considered both old and new information in denying Camilo's second parole application. The SICR included undated information and information that may have been considered by the Board at Camilo's first parole hearing. We are unable to ascertain from the record on appeal whether the Board's denial of Camilo's second parole review was limited to its consideration of new information obtained since the denial of his first request for parole.

On this record, we are constrained to vacate the Board's denial of Camilo's second request for parole and the imposition of a sixty-month FET. We remand to the Board for consideration of Camilo's second parole review limited to new

7

information post-dating the Board's denial of Camilo's first parole application consistent with the 1979 Parole Act as applicable here.  Under the 1979 Act, there is a presumption in favor of parole, and the State has the burden of proving by a preponderance of the evidence there is a substantial likelihood Camilo would commit a crime if released on parole.

Vacated and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-2116-22